May it please the Court, Edie Cunningham of the Federal Defender's Office, on behalf of Mr. Rosas-Dominguez. I'd like to reserve three minutes, if possible. The Court imposed a 33-month sentence, even though the prosecutor, probation, and the defense agreed that that was significantly longer than necessary to achieve the sentencing goals. The judge varied up to achieve the 2015 illegal reentry crime of violence enhancement, 16-level, that didn't categorically qualify, but that enhancement had been abandoned by the commission in 2016 as reflecting flawed policy. The district court committed procedural errors, and the resulting sentence was substantially unreasonable. In way of background, my client was sentenced in June 2017, eight months after the new guideline had come out. In 2016, the commission abandoned the 16-level enhancement because it put too much weight on a single serious prior conviction, and they replaced it with a scheme that put more weight on prior criminal immigration history. And now other prior convictions are dealt with through sentence-imposed enhancements, the longest of which is a — or the greatest of which is a 10-level enhancement, which in this case recommended a 21- to 27-month range. This reflects the commission's most informed thinking about the best sentences for illegal reentry defendants to achieve the sentencing objectives. And this change in approach is very pertinent to my client's case. Why don't you be a little more precise? Are you saying the Court should have used the later guideline? Well, Your Honor, given the way that the Court used the 2015 guideline, yes, she should have. What's your best case for that? Because generally speaking, if the guideline range is lower in a prior manual, then that's the one that's most beneficial to the defendant. And that's what the district court started with. Well, she calculated that range, or the Probation Department did, but that's not what she used as her benchmark and starting point. She used as her benchmark and starting point the 33- to 41-month range that was in the 16-level enhancement. And what Molina-Martinez and Resson say is that the district court has to use the correct benchmark and keep that in mind throughout the sentencing process. But I think she used the correct benchmark. She just applied it in a different way that ended up in the same area because of the upward adjustment, correct? Well, Your Honor, benchmark means a point of reference from which a measurement may be made. Right. So she starts off and says, I'm going to use this 2015 manual because it benefits the defendant. So far, so good, right? Well, Your Honor, so far, so good. And then she says, this is the guideline range I'm going to use. So what's wrong with that? Well, Your Honor, there are a few things wrong with what she did. But to let me to finish the point I'm making is that she never really used that as a benchmark. Way back in October 2016, when she found out that it didn't categorically qualify, she said from the get-go, I'm certain that's not enough. I'm certain that you need a sentence close to 41 months. That's on pages of the E.R. 46 and 50. Then, during her sentencing explanation, at least four times she said, you really deserve a 16-level enhancement. You really need to be sentenced to that. Those are determinations that a sentencing judge is free to make. In other words, you know, for the reasons expressed, not to follow the guideline. Are you okay? Well, Your Honor, excuse me, a couple of responses to that. The district court is required to take into account the policy rationale of the current guideline under the sentencing statute. And especially here — Even if it's harsher? Well, why the current guidelines? Why the current guideline? Because that's the guideline in effect at the time of sentencing. And the sentencing statute requires that to be taken into account. No, no, no, no, no. And can — No, just a minute, just a minute now. You apply the current guidelines, as Judge Thomas said, if they're more favorable to the defendant. Otherwise, you have double jeopardy problems, right? Well, Your Honor, it's not — So the district court has to choose one guideline or the other as a starting point. Well, Your Honor — If it chooses Guideline A, then you're not bound by the policies in Guideline B. Well, Your Honor — Are you? Is that what you're saying? This is — this is a different situation because of the way the district court perceives it. Different from what? Your Honor, it's the whole guideline that has to be taken into account to consider which is more favorable. Counsel, and I think that's what Judge Tshishima is getting at. I know we're peppering you with questions, but this is a really important point. And it seems to me that the sentencing judge has got an ex post facto problem if she uses the newer, tougher guideline. I'll grant you that typically we look at the day of sentencing, that's the guideline, that's one that's applied. But she's using the one that's more lenient. So what's the problem right there? Your Honor, the overall guideline was not more lenient. If you look at the comment and the reason for amendment in the 2015 guideline, it says, if the prior conviction does not categorically qualify, then, therefore, that may be grounds for an upward variance. So the entire guideline and the way that she looked at the 2015 guideline recommended to her, based on the facts of the offense, a 16-level enhancement. So this was not a categorical — the prior was not a categorical match, right? No. But there were — the facts were not objective to in the PSR. They were supported. So the district court said, this is really a 16-level enhancement, even though technically it's not. But if you look at the entire guideline of the 2016 manual and you look at the reason for amendment and you look at the commentary, that guideline recommends only a 21- to 27-month range and a 10-month enhancement. And, actually, if you look at the guideline section — I understand that as a matter of a substantive objection to the sentence. But I just — I just don't see a procedural error in using the guideline range that's more favorable to the defendant. Well, Your Honor, I've — And that's the basis from which she started. Now, your argument is, then she found her own way to get back to what the — to a higher level. Yes, Your Honor. And it did — it did result in a substantively unreasonable sentence under the circumstances, because she gave disproportionate weight to the 16-level crime of violence. She's not just talking about the 2015 guideline. She's saying this 16-level enhancement should apply to you. You should be sentenced consistent with other people that have that 16-level enhancement. But other defendants who are similarly situated and sentenced when my client was sentenced in June 2017 were not being subjected to that enhancement. So what she actually did is she created disparities. And I pointed in my brief on the — in the reply brief on page 14 that there was another individual who actually committed a serious sexual assault about the same time as my client, aggravated kidnapping, which did not result in a sexual assault. And he had a 13-month sentence, and my client got a 33-month sentence. So what she did, by placing disproportionate weight on the 16-level enhancement that was — that had been abandoned as flawed policy, she created unwarranted disparities. It resulted in a substantively unreasonable sentence, particularly given the fact that my client's history — he was 20 years old at the time. Everything since then has been positive. He has no criminal immigration history at all. Alitoson, I think she was upset at the violence of the prior crime, and you made the point that it was an old crime and he had changed. That's the — that was the argument that she heard, isn't it? Yes, Your Honor. But also, under the current thinking of the commission, it is inappropriate to put so much weight on a single serious prior conviction. And that was a very serious flaw of the old guideline that was not based on empirical study. The new guideline is, and that rationale should have played a role in her sentencing calculus if she was going to vary up. Sure, if she's going to sentence him within 8 to 14 months, the 2015 range without the enhancement, that's great. But that's not what she did. She disregarded that from the get-go. And she disregarded the commission's new thinking about it. Her sentencing explanation, I believe, was inadequate because it relied so heavily on the 16-level enhancement that had been abandoned. You're down to about a minute. Do you want to reserve? I'll reserve the rest. Thanks. May it please the Court. Sarah Maloney for the United States. The district court acted well within its discretion when it applied the 2015 guidelines, the guidelines more favorable to the defendant, and imposed a 33-month sentence that included an upward variance under the 3553 sentencing factors. As the probation office found in the PSR, and there would be an ex post facto violation if the defendant was sentenced under the 2016 guidelines because the new version in place at the time of the offense. There was no objection by either party at sentencing. And the immigration judge went ahead and adopted the PSR. You mean the district judge? The district judge adopted the PSR and adopted the PSR. So how do you distinguish United States v. Amascua-Vazquez? In that case, the we held that 16-level enhancement was substantively unreasonable on a reentry case. Well, here, what the district court judge did is she started at the guideline range, the advisory guideline range, and considered that in addition to all the sentencing factors. And her decision shows, and she discusses at length, several of these 3553 factors. In addition, in both the 2015 and the 2016 guidelines for illegal reentry, when considered as a whole, as the guidelines require under 1B1.11, both of the manuals provide for an upward departure based on the seriousness of a prior offense. So the sentencing guidelines themselves anticipate that, well, I guess their own inadequacy in the context of serious prior convictions. And the Convention recognizes with Note 5 in the 2015 guidelines and Note 7 in the 2016 guidelines that these offenses include a particularly wide range of conduct. And it's not possible to include all of the relevant circumstances in the offense level. Would you agree that the sentence as imposed failed to consider the philosophy of the 2016 guidelines with regard to a single old offense? The district court judge did not specifically address the policy behind the 2016. No, I understand that. I'm just saying, do you agree that the district judge placed too much weight on the single conviction in light of the 2016 change of philosophy? No, we don't agree. And, indeed, if you look at her decision, she goes on at length to list the reasons for the upward variance. And one is that the defendant has, in his own defense counsel's words, a disturbing prior kidnapping offense. I mean, in context, it seems as though this crime, and it was a serious crime, was the primary motivating factor for the district court. Would you agree? Yes, she placed great weight on it, given the serious violence here. But, in addition, what we have here is a... Excuse me. When you said she placed great weight on it, it seems to me it's more than that, right? Isn't it his only prior, and he's had 20 years of pretty exemplary behavior since? Well, the — Is there any other explanation for the sentence? The district court judge stated that he hadn't showed that he had rehabilitated. And, indeed, when looking at the PSR, he arrived in this country in 1994, and within four years, he had been arrested for two separate violent crimes against women, violated a protective order, and, of course, he was arrested for this very serious offense, attempted kidnapping and sexual offense using a deadly weapon. What's his prior conviction? How many prior convictions? So he has one prior conviction and two prior. Okay. And it's a serious conviction. But I'm — and I'm not trying to split hairs. It's just that in response to Chief Judge Thomas's question, I can't see anything else that justifies this sentence. It's a serious conviction, I'll grant you that. But there is this track record since then of — seems pretty sterling. So is there any other explanation for the sentence? The district court judge is entitled to consider protection of the public. The — Okay. The other explanation — Absolutely. And that's why the prior — the seriousness of the prior offense, of course, is so very important. But is there anything else? This is not a trick question. I'm just figuring out if I — am I missing anything else in that 20-year period? Well, the defendant really didn't put out much evidence to show very many mitigating factors. She did consider what he did put, which were statements by counsel in the sentencing memorandum, statements by counsel at the sentencing hearing. When the defendant had an opportunity to describe what he had been doing for the past 20 years, he didn't. All he did was write a letter and have the translator read it to the judge. And in that letter, he merely mentioned his family and how he came to — he was coming to the United States to work. While the defendant might have been young, and the court notes this, when he — Where did the other evidence come from about being elected to the position and all the good deeds in his home? That — defense counsel proffered that evidence during the sentencing hearing. The defendant neither confirmed nor denied it. Okay. And — but the immigration — but the district court judge did indeed consider these — these mitigating factors when she was weighing in against the adverse factors. Well, there was really only one adverse factor, wasn't there? Well, he had — Well, there was a serious one, and that's — I think that's the question for us. I mean, it — the judge did what she did. That's — you don't have to — you can't invent a new reason. I want to make sure that we're accurately interpreting what she did. But in reviewing it, it appears that she was very, very disturbed about this prior episode, which is pretty serious. And that was the primary motivation and the upward adjustment. She was disturbed by the crime and that he appears to be an untreated sex offender. So she's — she's interested, and her — her decision reflects this, that — and she even states that she was considering the need to devise a sentence that's enough, but not too much. She was clearly concerned with opposing a sentence designed not only to protect the public, but to prevent recidivism and to impose, if possible, a respect for the law. And, in fact, she did consider these mitigating factors because she was inclined originally to perhaps go as high as a 40-month sentence. And — and instead, she felt as though, based on the facts presented, that a term of 33 months was — was fair and appropriate, and nowhere near the statutory maximum of 10 years. And — and she acted well within her discretion, because when the defendant returned to this country in 2016, he was 40 years old. He had been — he had served a considerable sentence in the United States. He had been deported and mourned that he couldn't return again without permission from immigration authorities, and that if he did, he would be prosecuted. He was 40 years old when he returned. He — he should have known better. So the Court also considered that the — that the defendant's previous significant sentence may not have been enough to deter him from coming to this country again and — and violating the law, unless there are any other questions. Thank you, counsel. Your Honor, the district court simply did not consider or explain why 27 months was not enough to achieve the sentencing goals. Although the new guideline has a departure provision, it's not based on the same rationale. It says, if a prior conviction, like murder, is too old to receive criminal history points, then the district court may want to give an upward variance. Murder is the most serious of — of crimes. The Sentencing Commission was certainly thinking about serious crimes when it came up with the new guideline and the 10-level enhancement that it deemed sufficient, and she did not address why that was not enough. He did present evidence of his activities in Mexico. Some of the certificates were presented in the sentencing memorandum at ER 81 through 98. He presented additional documentation at the sentencing hearing itself. I believe that's on ER 7. He did not return to this country for 12 years. He didn't just keep coming back. He did so because of very desperate situations with health issues with his family. His crime when he was about 40 years old was the nonviolent crime of illegal reentry, and the prosecutor who represented the government at sentencing suggested that unsupervised probation would be enough, given his evidence of rehabilitation. The prosecutor at sentencing accepted that evidence, and this was just an unreasonable sentence. The Court just had this 16-level enhancement that did not apply and had been abandoned, stuck in its head when it imposed the sentence. Roberts. Thank you, counsel. Thank you. The case just ordered to be submitted for decision.
judges: Tashima, Thomas, Christen